```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


STEVEN P. HASSMAN,              )
                                )
    Plaintiff,                  )
                                )
         v.                     )    1:05cv56 (JCC)
                                )
FRANCIS J. HARVEY,              )
Secretary of the Army           )
                                )
    Defendant.                  )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff Hassman filed this religious discrimination, retaliation, and disability discrimination suit against the Army. For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment as to the retaliation claims and the discrimination claims.

**I. Background**

Plaintiff Steven P. Hassman, a Jewish man with alleged hearing loss, filed this suit against the United States Army alleging religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), and discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*.

-1-

Since 1982, Hassman has been employed by the U.S. Army at the Foreign Language Training Center Europe, George C. Marshall European Center for Security Studies ("Marshall Center"), and its predecessor organization, the U.S. Army Russian Institute ("USARI"), in Germany. At all times relevant to this suit, Hassman has been a GS-12 Russian Language expert.

Hassman has filed complaints with the Equal Employment Opportunity Commission ("EEOC") against the U.S. Army. He filed his most recent complaint in 1997. This administrative complaint was terminated when he filed suit in the United States District Court for the Eastern District of Virginia in March 1999. *See Hassman v. Caldera*, No. 99-386 (E.D. Va. filed March 22, 1999). Hassman filed that case against defendant Louis Caldera, then Secretary of the Army, in his official capacity, alleging claims for religious and national origin discrimination and reprisal. The Honorable Judge T.S. Ellis, III granted summary judgment to the defendant on November 22, 1999. *See Hassman v. Caldera*, No. 99-386 slip op. (E.D. Va. Nov. 22, 1999). The Fourth Circuit affirmed on October 17, 2002. *See Hassman v. Caldera*, 2000 WL 1186984 (4th Cir. Aug. 22, 2000).

Hassman filed this suit on January 24, 2005. Hassman alleges that he was issued a job assignment as a Language Specialist at the Defense Threat Reduction Agency ("DTRA") in Virginia; denied the ability to compete for the position of

Chair, Russian and Ukranian Language Department to which Natalya Pekler ("Pekler") was noncompetitively promoted; denied the opportunity to compete for the position of Chair, Linguist Enhancement Department ("CLED") to which Peter Armbrust ("Armbrust") was appointed; denied his overseas tour extension; and denied administrative leave and expenses for developmental travel to the Ukraine. Hassman alleges that he was discriminated against on the basis of his religion and disability and retaliated against because of his prior EEOC activity. Many of Hassman's claims arise out of actions taken by Keith Wert ("Wert"), who became Director of the Foreign Language Training Center Europe in February 1999.

Hassman originally sought: (1) a declaratory judgment that Defendant has discriminated and retaliated against Hassman; (2) an injunction enjoining Defendant from further discrimination and/or retaliation against Hassman; (3) retroactive promotion to the position of Chair, Linguistic Enhancement Department or Chair, Russian and Ukrainian Department, with back pay and benefits; (4) compensatory damages; (5) attorney fees; and (6) other legal and equitable relief to which he may be entitled.

On April 4, 2005, Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment. On May 6, 2005, Hassman filed a verified Rule 56(f) motion for discovery, arguing that without certain discovery, he was unable to properly

oppose the motion for summary judgment.  Also on May 6, 2005, Hassman filed an opposition to the Defendant's motions which exceeded the page limit.  The Court denied Hassman's request to exceed the page limit.

By Order entered June 10, 2005, the Court provisionally granted Defendant's motion to dismiss, retained jurisdiction over the case, and granted the Plaintiff leave to amend his Complaint to allege that he has exhausted his administrative remedies.  On June 10, 2005, Hassman filed an Amended Complaint.  On June 24, 2005, Defendant filed a renewed motion to dismiss or, in the alternative, for summary judgment.  On July 18, 2005, this Court granted Defendant's motion to dismiss the religious discrimination and discrimination claims arising out of Hassman's administrative leave/expenses and overseas tour extension claims.  The Court also granted Defendant's motion for summary judgment on the religious discrimination and retaliation claims arising out of Hassman's assignment to DTRA.  The Court denied Defendant's motion for summary judgment on the religious discrimination and retaliation claims arising out of the alleged denial of the opportunity to compete for the two Chair positions and the disability discrimination claim.

On October 6, 2005, the Defendant filed a Motion for Summary Judgment as to Plaintiff's remaining claims, namely the discrimination and retaliation claims surrounding the two job

positions and Hassman's Rehabilitation Act claim relating to the DTRA job offer.  Plaintiff filed an opposition to Defendant's Motion on October 28, 2005 as to the religious discrimination and retaliation claims.  Plaintiff articulated in the opposition that he is no longer pursuing his claim of disability discrimination in connection with his assignment to DTRA.  This Motion is currently before the Court.

## II. Standard for Review

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a

verdict for a nonmoving party. *See id.* In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *See id.* As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

### III. Analysis

Plaintiff's religious discrimination and retaliation claims pertain to two positions to which he was not promoted: 1) the Chair of the Russian and Ukrainian Language Department, a GS-13 position, to which Natalya Pekler was noncompetitively promoted, and 2) the Chair of the Linguist Enhancement Department, a GS-13 position, to which Peter Armbrust was selected to fill.

Defendant alleges that in August of 1996, Plaintiff was asked by a supervisor if he was interested in taking over certain duties that later evolved into the Chair of the Russian and Ukrainian Language Department. After Plaintiff declined because

the offered position was not a GS-13 position initially, Pekler was assigned to the position. As Defendant states, because of Pekler's exemplary performance and increased job responsibilities, she was noncompetitively promoted to a GS-13 position in 2001.

Defendant further alleges that Wert contacted Plaintiff in 2000 regarding the CLED position; however, Plaintiff again declined to pursue the position because it was not initially a GS-13 position. As a result, Wert contacted the Defense Foreign Language Institute ("DFLI") for purposes of finding qualified candidates, and later Armbrust was selected to serve in the position. As a Title X employee of DFLI, Armbrust has a different rank-in-grade structure from the General Service employees. Plaintiff states that the position that he discussed with Wert at the time was not the position later filled by Armbrust.

**A. Retaliation**

To state a prima facie case for retaliation, the plaintiff must show that: 1) he engaged in a protected activity; 2) the employer took an adverse action against him; and 3) a causal connection existed between the protected activity and the claimed adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). After the plaintiff establishes a prima facie case, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802-03 (1973), analysis applies, and the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer does so, the plaintiff must demonstrate that the employer's proffered reasons are pretextual. *Id.*

Defendant concedes for the purpose of this Motion that Plaintiff engaged in a prior protected activity by filing a formal EEOC complaint in 1997 of which Wert was aware by March 1999, at the latest. (Deft's Mot. 13). Likewise, Defendant also concedes for the purposes of this Motion that Plaintiff suffered an adverse personnel action by not being non-competitively promoted to either of the Chair positions. (Deft's Mot. 13).

To set forth a prima facie case, Hassman must also establish the existence of a causal connection between the protected activities and the adverse personnel actions. The Defendant alleges that Plaintiff cannot do so because of a lack of temporal connection. As a general rule, temporal proximity, by itself, will establish causation only if the time period between the protected activity and the adverse action is "very close." *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). Defendant claims that Plaintiff cannot overcome the at least thirty month lapse.

Despite the lack of temporal proximity, Plaintiff claims that a causal connection can be established based upon a "pattern of discrimination and reprisal directed against him over a period of a decade." (Pl.'s Opp. 10). Plaintiff cites findings by the Army Inspector General and this Court of discrimination against Jewish employees at USARI. Plaintiff, himself, suffered no discrimination in any of these cases. Plaintiff alleges that he was "at the heart of the proceedings against USARI" and was terminated as a result in 1991, after which he was reinstated with back pay and full benefits. (Pl.'s Opp. 11-12). Plaintiff lists additional acts that he classifies as a pattern of discrimination manifesting out of his early 1990's participation in actions against USARI. However, Plaintiff has listed no actions in addition to those at issue in this case following the filing of his 1997 EEOC complaint and 1999 civil action. Moreover, the balance of Plaintiff's pattern of discrimination occurred prior to Wert's arrival at the Marshall Center; notably, Wert is the only official Plaintiff singled out as a discriminating/retaliating offender.

Plaintiff cannot rely on temporal proximity to establish a causal connection between his protected activities and the adverse personnel actions. The lapse of time between the denial of the opportunity to compete for the Chair positions and any protected activity of Plaintiff far exceeds the general time

limit recognized by the Fourth Circuit for establishing a *prima facie* case of retaliation.  *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (holding that a ten-week period between the protected activity and the adverse action gives rise to a sufficient inference of causation to satisfy the prima facie requirement).

Furthermore, Plaintiff fails to provide any evidence of retaliation based on his "pattern of discrimination and reprisal" argument.  The Court acknowledges that Plaintiff was reinstated after being terminated due to engaging in protected activity.  However, this termination occurred, according to Plaintiff, in November of 1991.  Absent the claims presently at issue regarding the lack of opportunity to compete for two Chair positions, Plaintiff articulates no evidence of a "pattern" of retaliation other than employment decisions dating back to January 1994.  As a result, Plaintiff cannot rely on temporal proximity to prove a causal connection between the adverse personnel actions at issue and his protected activity.  Likewise, the Court is not persuaded by Plaintiff's reliance on a "pattern of discrimination and reprisal" to establish a causal connection.  Therefore, the Court will find that Plaintiff has failed to establish the existence of a causal connection between the protected activity and the claimed adverse action, and thus Plaintiff has failed to present a *prima facie* case of retaliation.

**B. Religious Discrimination**

Absent direct evidence of discriminatory treatment, the plaintiff must satisfy the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), and its progeny. *See Gairola*, 753 F.2d at 1286. Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of religious discrimination by showing that: 1) he is a member of a protected class; 2) he was qualified for the job and that his performance satisfied his employer's expectations; 3) he suffered an adverse personnel action despite his qualifications and performance; and 4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *See, e.g., Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999); *Gairola*, 753 F.2d at 1286.

Once the plaintiff sets forth a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Of course, the ultimate burden of persuasion rests with the plaintiff, who must then prove that the reason proffered by the employer was not the true reason for the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Defendant claims that Plaintiff fails to make a prima facie showing because he merely alleges the lack of an opportunity to compete for the positions. However, a long line of precedent suggests that "the requirements for establishing a prima facie discrimination case are flexible and may vary according to the case." *Lockridge v. Bd. of Trs.*, 315 F.3d 1005, 1010 (8th Cir. 2003). *See Elam v. D.C. Fire & EMS Dep't*, 2005 U.S. Dist. LEXIS 16936, *15 (D.D.C. 2005)("Although a plaintiff in a Title VII . . . case must usually show that he applied for a promotion and was rejected, a plaintiff is not required to do so when the position was not posted and the plaintiff did not know the position was open"); *Cones v. Shalala*, 199 F.3d 512, 518 (D.C. Cir. 2000) (noting a Plaintiff does not fail to establish a prima facie case for failing to apply to a position that is never open to competition); *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer"). It is clear in the present case that Plaintiff was interested in being promoted to a GS-13 position. Additionally, Plaintiff could not apply for Pekler's job because it was never open to competition. Likewise, Defendant's advertisement of Armbrust's position was completed at

the Defense Foreign Language Institute in Monterey, California and not at the Marshall Center. Accordingly, Plaintiff's failure to specifically apply for each of the positions in question does not disqualify him from forwarding a *prima facie* case of discrimination.

In fact, the Court finds that Plaintiff has proven a *prima facie* case of discrimination. There is no dispute that Plaintiff is a member of a protected class. He was qualified for the job as evidenced by Defendant's insistence that he was offered these very positions regardless of whether he was in fact offered the positions. Plaintiff suffered an adverse personnel action despite his qualifications and performance, and the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination because of the appointment of persons outside of the Plaintiff's religion.[1]

Having proven a *prima facie* case, the burden of production then shifts to the Defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Defendant claims that Pekler was noncompetitively promoted as a result of her job responsibilities expanding rapidly and her exemplary

---

[1] The Court is not persuaded by Defendant's claim that Armbrust is not a proper comparator for the CLED position and therefore Plaintiff cannot establish a *prima facie* case of religious discrimination. Defendant cites no legal authority for this assertion, and the most relevant comparison is that Armbrust is outside of Plaintiff's protected class.

performance for two and a half years.  Defendant asserts that Armbrust was selected because he was a senior instructor from DFLI, and as such would be well-suited for the supervision of the academics of the Linguist Enhancement Program.  In satisfying this burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons; it need only articulate -- not prove -- a legitimate, nondiscriminatory reason for its action."  *Warren v. Halstead Industries, Inc.*, 802 F.2d 746, 754 (4th Cir. 1986).  Defendant has certainly done so here.

Therefore, the final step in the *McDonnell Douglas* analysis - now that Plaintiff has asserted a *prima facie* case of discrimination and Defendant has articulated a legitimate, non-discriminatory reason for its actions - requires that Plaintiff prove that the stated non-discriminatory reasons of Defendant were pretextual or not the true reasons for the employment decision.  Plaintiff can do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

The Court is not persuaded that a discriminatory reason more likely motivated the employer from denying Plaintiff the opportunity to fill these positions given the pattern of approaching Plaintiff with job opportunities as they arose.

-14-

Although Plaintiff contests what exact position he was confronted with by Wert or Wert's predecessor, there is a clear pattern of considering Plaintiff as positions became available.  Plaintiff provides no evidence that his Jewish faith played any role in the selection of Pekler or Armbrust over him for the respective Chair positions.

Likewise, Plaintiff is unable to show that Defendant's proffered explanation is unworthy of credence.  The Court finds that Pekler's responsibilities expanded to the extent that a promotion was warranted, regardless of the extent to which her duties increased.  Similarly, it is logical that an individual in Armbrust's former position would be well-suited for the position contested by Plaintiff in the present Motion.  Defendant's assertions stating as much are not only logical, but accepted as sincere.  Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reasons for promoting Pekler and hiring Armbrust are pretextual.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to the discrimination claims.

**IV. Conclusion**

⎯⎯⎯⎯⎯⎯⎯⎯⎯For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment.  An appropriate Order will issue.

November_23_, 2005                   _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE